UNITED STATES v. WEEKS.

SAME v. WOOD & SELICK.

(District Court, S. D. New York. October 28, 1912.)

Nos. 4-425, 4-426, 4-427, 4-500.

1. INDICTMENT AND INFORMATION ⊙4—FOOD AND DRUGS ACT—VIOLATION—PROSECUTION BY INFORMATION.
   Prosecution for violation of Food and Drugs Act June 30, 1906, c. 3915, 31 Stat. 768 (Comp. St. 1913, §§ 8717–8728), by information, is proper.
   [Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. §§ 24–27; Dec. Dig. ⊙4.]

2. FOOD ⊙15—FOOD AND DRUGS ACT—VIOLATION—MISBRANDING—"COMPOUND."
   Where a package labeled "Fruit Wild Cherry Compound" contained an imitation of Wild Cherry essence in part for the genuine Fruit Wild Cherry, there was no violation of the Food and Drugs Act by misbranding, since the word "compound" was a noun indicating that the Fruit Wild Cherry was in composition or combination with something else; the term meaning a mere combination of two or more elements, ingredients, or parts, a compound substance.
   [Ed. Note.—For other cases, see Food, Cent. Dig. § 14; Dec. Dig. ⊙15.
   For other definitions, see Words and Phrases, First and Second Series, Compound.]

3. FOOD ⊙15—FOOD AND DRUGS ACT—STATEMENT OF INGREDIENTS.
   The Food and Drugs Act does not require that ingredients of a compound, not poisonous or deleterious, be stated on the package.
   [Ed. Note.—For other cases, see Food, Cent. Dig. § 14; Dec. Dig. ⊙15.]

4. FOOD ⊙5—FOOD AND DRUGS ACT—VIOLATION—COLORING.
   The coloring of a compound is not in violation of the Food and Drugs Act so long as it is the proper and natural result of the mere combination of the elements of the compound, and not of the addition of artificial coloring.
   [Ed. Note.—For other cases, see Food, Cent. Dig. § 1; Dec. Dig. ⊙5.]

5. FOOD ⊙15—FOOD AND DRUGS ACT—MISBRANDING.
   The labeling of a package, consisting chiefly of imitation of Wild Cherry essence artificially colored, as "Fruit Wild Cherry Compound," was a violation of the Food and Drugs Act by misbranding, since the phrase "Fruit Wild Cherry Compound" conveys a representation that

---

⊙For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the dominant element in the combination is genuine Fruit Wild Cherry, to which has been added something else in the nature of an essence to make the product as labeled.

[Ed. Note.—For other cases, see Food, Cent. Dig. § 14; Dec. Dig. ☞15.]

Upon informations against Oscar J. Weeks and others charging the misbranding of food. Defendants moved to quash. Motion denied. See, also, 224 Fed. 64.

Henry A. Wise, U. S. Atty., and H. Snowden Marshall, and Walter Jeffreys Carlin, all of New York City, for defendant.

MAYER, District Judge. There are four cases, and the defendants have filed motions to quash in each. As to the three cases (4–426, 4–425, and 4–427), I decided on oral argument favorably to the government's contention on all but one point, and upon that I reserved decision.

[1] The proposition in question is that the informations should be quashed because they are not supported by verification or oath showing personal knowledge or probable cause. The proceeding by information, as in this case, is an ancient method of procedure, which has come to us from the common law of England, and it is well settled that this method of procedure is proper here. The law on the subject is concisely stated in Bishop on Criminal Procedure.

The demurrers in three of the cases are therefore disallowed.

[2] In the case against Weeks (No. 4–500), demurrer has been interposed upon the additional ground that the counts of the information and each of them are insufficient and fail to charge an offense. The information is in two counts. In the first count the information states that the article of food was labeled as follows:

"Fruit Wild Cherry Compound. Guaranteed to contain no Ether or Chloroform. From O. J. Weeks & Co. Specialties for Manufacturing Bakers, Confectioners and Ice Cream Makers, New York, N. Y. U. S. Serial Number 2049." "Guaranteed under the Food and Drugs Act, June 30, 1906"

—and being so labeled was adulterated, in that a substance, to wit, an imitation Wild Cherry essence, had been mixed and packed with the article of food purporting to be Fruit Wild Cherry Compound, so as to reduce and lower and injuriously affect the quality and strength of the article. It is further stated that the article is adulterated, in that an imitation Wild Cherry essence had been substituted in part for the genuine article, Fruit Wild Cherry, which the article purports to be, and further that the article is adulterated, in that it has been colored in a manner whereby inferiority is concealed.

Briefly, the information attacks the propriety of the label. It is obvious from reading the label that there is no suggestion that the article purports to consist wholly of Fruit Wild Cherry. The very phraseology negatives any such suggestion. In this connection it may be well to comment on Frank v. United States, 192 Fed. at page 869, 113 C. C. A. at page 193, cited by the government. There it will be

noted that the article was called "Compound White Pepper." The court said:

"A primary label, 'White Pepper Compound,' would doubtless fairly indicate that the article is a compound of white pepper and some other ingredient. * * *"

Then the court goes on to say that the term "Compound White Pepper" does not necessarily import the same idea as "White Pepper Compound," and calls attention to the fact that the adjective "compound" is sometimes used colloquially as meaning "having added strength." But the word "compound" in the case at bar, as in the phrase "White Pepper Compound," is a noun, and indicates that the Fruit Wild Cherry is in composition or combination with something else. A good many dictionary definitions will be found, and it is necessary only to cite one which is concise and clearly stated:

"That which is compound or compounded; anything that is a combination of two or more elements, ingredients or parts; a compound substance." Standard Dictionary.

Assuming that the article does not contain any added poisonous or deleterious ingredients, there is nothing to prevent the combination of Fruit Wild Cherry with an imitation Wild Cherry essence, and it is obvious that the purchaser is at once notified by the title that the article in question does not consist wholly of Fruit Wild Cherry, but that Fruit Wild Cherry is only one of the ingredients, in combination with other ingredients.

[2] The government asks me to hold that the ingredients of the compound must be stated on the package. I find no warrant in the statute for any such holding. The statute was carefully drawn after extended discussion, and certainly, if Congress had intended that the ingredients of a compound should be set forth upon the label, the statute would have so stated. I have not overlooked the case of William Henning & Co. v. United States, 193 Fed. 52, 113 C. C. A. 382. In the report of that case there is nothing to indicate how the label read, and for all I know it may have been subject to the criticism for use of the word "compound" as in the Frank Case, or there may have been some other fact which contributed to the decision.

[4] The statement under this count that the article had been colored in a manner whereby inferiority is concealed is of no consequence. The coloring may have been the proper and natural result of the combination. There is in this count no allegation of artificial coloring.

For the reasons briefly outlined, the demurrer to this count is sustained.

[5] The second count refers to the same label, but here it is stated that the article consists chiefly of imitation "Wild Cherry essence artificially colored." This, to my mind, presents an entirely different situation. I think the phrase or name "Fruit Wild Cherry Compound" conveys to the mind a representation that the dominant element in the combination is genuine Fruit Wild Cherry, and that to this genuine Fruit Wild Cherry has been added something else, for instance, in the nature of an essence or extract, which, in combination with the genu-

ine Fruit Wild Cherry, makes the "Fruit Wild Cherry Compound." Of course, the purpose of the statute as to misbranding was to prevent deception of the public, and if it be shown that the dominant element in this compound is the imitation essence, and not the fruit, then it seems to me the statute has been violated.

In this count the statement is made that the article consists chiefly of an imitation "Wild Cherry essence artificially colored." When I use the expression "dominant," I do not mean that necessarily the Fruit Wild Cherry must be greater in volume than the imitation essence. Sometimes one element of combination, by reason of its character and strength, even if smaller in quantity than another element, may nevertheless control the character of the combination. This, and questions relevant to it, can best be developed on the trial, when the court and jury will have the benefit of expert explanation.

I think it unwise on demurrer to pass upon the question raised as to artificial coloring, and that a much more satisfactory result will be attained when the court is enlightened upon the trial upon this subject, and it is not necessary to pass upon this point, because I have already indicated that I shall disallow the demurrer to this count in any event.

For the reasons stated, the demurrer to the second count is disallowed.